ROBERT FORBES v. JAMES CALDWELL et al.

1. CASE-MADE — *No Copy of Deed Therein*. This court cannot determine whether the trial court committed error in refusing to allow the record of a deed to go in evidence to the jury when the made case presented here contains no copy or description of the record or deed.

2. STATUTE OF LIMITATION; *Possession, Not Taken*. The running of the statute of limitation by the adverse possession of real estate is not

interrupted in favor of a plaintiff in an action of ejectment by a judg-
ment of forcible entry and detainer in his favor and against the de-
fendants in such an action, when no possession is taken or attempted
to be taken in pursuance of such a judgment.

*Error from Shawnee District Court.*

Action brought November 29, 1884, by *Forbes* against
*Caldwell* and two others, to recover the N.W. ¼ of the N.W. ¼
of sec. 8, tp. 11, range 15 east, situate in Shawnee county.
Trial by a jury at the September term, 1885, and verdict for
defendants. The plaintiff brings the case here.

The land in controversy was allotted to Louise Pa-Ya, a
member of the tribe of Pottawatomie Indians, under the sup-
plemental treaty with that tribe made by the government on
the 29th day of March, 1866. A patent was issued to her
on the 21st day of August, 1868. Louise Pa-Ya conveyed
the land to Josette Young on the 26th day of July, 1866;
Josette Young conveyed it to Wm. C. Plummer, October
26th, 1866; Wm. C. Plummer conveyed it to Sarah Wright,
September 22, 1879; Sarah Wright executed a bond for a
deed to the land to one Tilden, September 22, 1879; Tilden
subsequently assigned this bond for a deed to James Caldwell,
who with his wife and Sarah Wright are the defendants in
this action. The plaintiff claimed title by virtue of a convey-
ance made to him by Louise Pa-Ya, or Shearer, she having
married a man by the name of Shearer, said conveyance hav-
ing been executed on the 8th day of May, 1880; also a deed
from Theo. F. W. Taylor to him of date 23d June, 1880, for
the same land; also a deed for the land from Peter Wash-
Ka-Nah-Be, unmarried, and Se-Bus-Sun, unmarried, both
heirs-at-law of Je Mahan, deceased, and William E. Thomp-
son, of date May 24th, 1880. The first two were claimed to
be the sons of Louise Pa-Ya, or Shearer, and Thompson
claimed some interest in the land not disclosed in the evidence.
The deed from Taylor to plaintiff in error was based on a
previous conveyance from Louise Pa-Ya to Taylor, and this
latter conveyance was ruled out by the trial court, and is not
preserved in the record. The record contains evidence show-

ing an occupation and improvement of the land by Plummer, Sarah Wright, Tilden, and Caldwell, for more than fifteen years before this suit was brought.

*A. H. Case,* and *Chas. Curtis,* for plaintiff in error.
*Overmyer & Safford,* for defendants in error.

Opinion by SIMPSON, C.: The pivotal question in this case is, whether the cause of action of the plaintiff in error is barred by the operation of the statute of limitation, which requires actions for the recovery of real property to be brought within fifteen years after the cause of action has accrued, this being such an action as is contemplated by the fourth subdivision of § 16 of the code of civil procedure. There are some preliminary rulings of the trial court which counsel for the plaintiff deem important enough to assign as errors, that deserve a passing notice. The first of these complaints is, the exclusion of the record of the quitclaim deed from Louise Pa-Ya, Mary McDowell and Pe-Au-Ish, to Theo. F. W. Taylor, dated June 12, 1875; filed for record June 14, 1875. It was admitted that the original deed was not in the possession or under the control of the party offering the record of it. The record of the deed was objected to as being incompetent, irrelevant, and immaterial; and because there was no evidence of the execution of it by Louise Pa-Ya the record was excluded, and an exception noted. It is said that this was a material error. It may have been so, but how are we to determine? The record does not contain a copy of the deed, neither is there any reason given for the ruling of the court. The deed may not have described the land in controversy; it may not have been acknowledged, or not properly acknowledged, or it may have disclosed other defects; so that any or all of these reasons or other reasons may have

1. Case-made, no copy of deed therein.

controlled the trial court. When the deed is not contained in the record, we cannot say whether its exclusion from the jury is error or not. We are bound to presume in this state of the record that it was not error.

The second complaint is, that the court below instructed the jury that they could arbitrarily reject, without cause or reason, the testimony of any witness. A cursory examination of the instructions given by the court will very easily determine that a small word is left out of the instructions, through inadvertence in making up the record. The first instruction is in these words:

"You are authorized by law to arbitrarily reject, without cause or reason, the testimony of any witness; but it is your duty to carefully consider and so far as possible harmonize all the testimony in the case, upon a basis of truth; but if you are unable to do this, then you are authorized, and it is your duty, to reject such of it as you think not entitled to credit."

It is hardly necessary to call attention to the words preceding and those following the sentence in which the court says "You are authorized by law to arbitrarily reject, without cause or reason, the testimony of any witness," to show that the court did really say "You are *not* authorized by law to arbitrarily reject the testimony of any witness." The insertion of the word "not" at the proper place makes the whole of the first instruction consistent, harmonious, and legal, while by dropping it, the instruction is rendered inconsistent and illogical. We must assume that in an instruction which is universally given in a case tried by a jury, no such glaring error would occur, except through the carelessness of some one in making up the record. Especially is this so when it is apparent from the face of the instruction, and from the connecting words, that a mistake has been made in transcribing it.

The next complaint is respecting the fifth instruction given by the court, and that is as to the character of the adverse possession sufficient to constitute the bar of the statute. The court said that—

"If the defendants continuously occupied the land in controversy for fifteen years preceding the time of the commencement of the action, (29th day of November, 1884,) and after the 21st day of August, 1868, (the date of the patent to Pa-Ya,) under their several deeds of conveyance, and that such occupation of said lands by the defendants and those under whom

the defendants claim to hold was open, notorious, adverse, and continuous, then this action is barred, and the plaintiff cannot recover in this action."

It is said that this is not a correct statement of the law of adverse possession; that the rule is, that the possession must be hostile in its inception, and so continue, without interruption, for the period of fifteen years; that it must be an actual, visible and exclusive possession, acquired and retained under a claim of title, inconsistent with that of the owner. This language must be construed in the light of the facts, as presented by the evidence in the case, because it is applied to them. The facts are, that in this case there was a hostile possession, adverse to that claimed by the plaintiff in error, and inconsistent with it. For a year, at least, each party resorted to every expedient to keep possession, so that if the instruction embodied a fair statement of the law, the facts justified the court in giving it to the jury. What is adverse possession? It is occupancy without the permission, and not in subserviency to the rights of the true owner. The instruction given used the words open, notorious, adverse, and continuous, and hence this seems to be more a criticism as to the phraseology of the instruction than a substantial complaint. We think the instruction complained of is a fair statement of the law, and that it was called for by the evidence.

To thoroughly understand the complaint about the sixth instruction given by the court, a short statement of facts is necessary. The claim to title of the defendants in error, originated in a deed from Louise Pa-Ya to Josette Young, dated July 26, 1866. Josette Young conveyed to Wm. C. Plummer October 20, 1866; Wm. C. Plummer conveyed to Sarah Wright September 22, 1879; Sarah Wright executed a bond for a deed to one Tilden, January 18, 1883; Tilden subsequently assigned this bond for a deed to James Caldwell, who with his wife and Sarah R. Wright are defendants in this action. During the time that Mrs. Wright claimed to be the owner, she rented the land in controversy to one J. A. Workman, who moved upon it, and cultivated a part

of it; he stayed on the land from sometime in February, 1880, until the 17th day of December, 1881. In February, 1881, under an arrangement with the plaintiff in error, he loaded most of his household goods in a wagon, left the house and premises, went a distance of two or three hundred yards from the house, stayed all night in the woods, and moved back the next morning into the house, and took possession of the land as the tenant of the plaintiff in error. A short time before this maneuver, one Wallace, as agent of Mrs. Wright, had given Workman notice to quit the land. These are the facts upon which counsel for the plaintiff in error base their contention, that the instruction is erroneous. Their theory is, that as Mrs. Wright had terminated the tenancy of Workman, by the notice to quit, Workman had a right to vacate the premises and become the tenant of Forbes, who was the true owner. Forbes had the right to take peaceable possession of the land, and lease to Workman, or anybody else, and such a possession would oust Wright and interrupt the running of the statute. The fallacy of such reasoning is easily seen when it is recollected that this court has repeatedly held, that the tenant is never allowed to dispute his landlord's title, after having accepted possession under him. (*Brenner v. Bigelow*, 8 Kas. 496; *Pettigrew v. Mills*, 36 id. 745; *Smith v. Cooper*, 38 id. 446.)

"It is a general, rule founded on reasons of public policy, that a tenant shall never be permitted to controvert his landlord's title, or set up against him a title acquired by himself during his tenancy, which is hostile in its character to that which he acknowledged when he accepted the demise." (Taylor's L. & T., § 605.)

"An adverse claimant who gets into possession of land by tampering with the tenant, cannot resist the landlord's claim when the tenant himself could not. The tenant must also regard the interest of the landlord with respect to his right of possession, and give due notice of any attempt to dispossess him. And the attornment of a tenant to a stranger is absolutely void, and will not in anywise affect the possession of his landlord." (Taylor's L. & T., § 180; Comp. Laws of 1885, ch. 55, § 14.)

It follows that Forbes did not get such possession by the removal and subsequent reëntry of Workman, as would dispossess Mrs. Wright, and that in law there was no change of possession, and the running of the statute was not interrupted. The instruction was right.

The only remaining question worthy of notice is as to the effect of the two judgments in forcible entry and detainer, on the statute of limitation. One was in favor of the plaintiff in error; the other was against Mrs. Wright, one of the grantees of the defendants in error. The one was, that Forbes had a right to the possession at the time this suit was instituted; the other was, that Mrs. Wright had not the right to the possession at the time her suit was commenced. The court charged the jury in the third instruction, that the plaintiff in error held the title in fee to the land in controversy by reason of his conveyance from Louise Pa-Ya, and is entitled to a verdict, unless barred before the commencement of this action by the running of the statute. This is to say that the plaintiff in error had a right to the possession at any time, from and after the execution of his deed, before the expira-

2. Statute of limitation; possession not taken.

tion of fifteen years from and after the date of the patent. These actions in forcible entry and detainer were both tried and decided before the expiration of the fifteen years. The plaintiff in error had undoubtedly the right of possession to this land from the date of his deed from Louise Pa-Ya on the 8th day of May, 1880; but he neither enforced his right to possession under his judgment in the action for forcible entry and detainer, nor brought his action of ejectment in time. There is evidence enough contained in the record to support the necessary finding of the jury included in the general verdict, that there had been a continuous adverse possession, hostile to the title of the plaintiff in error, for more than fifteen years before the commencement of the action.

One of the grounds of the motion for a new trial was, that on the trial the plaintiff in error was surprised to learn of the non-residence of Mrs. Wright, and this same fact was also urged as a reason for a new trial, on the ground of newly-

discovered evidence. Numerous affidavits on both sides were produced on the hearing of the motion for a new trial, and were so conflicting in many of their statements that we have made no attempt to reconcile them. The trial court took the matter under advisement, and after some months overruled the motion. We are inclined to think that the weight of the evidence on the motion was with the defendants in error.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.